693 N.W.2d 790 (2005)
In the Matter of Trust Fund A and the Trust Under Item VI, Both Under the WILL OF Alfred E. UCHTORFF, Deceased.
Christa E. Uchtorff, Appellant,
v.
Sally Hanson, Taylor Armstrong-Lucas, and Julie Kurt, Appellees.
No. 04-0288.
Supreme Court of Iowa.
March 18, 2005.
*791 Steven J. Havercamp of Stanley, Lande & Hunter, Davenport, for appellant.
Steven H. Jacobs and Linda K. Neuman, of Betty, Neuman & McMahon, L.L.P., Davenport, for appellees.
STREIT, Justice.
H.L. Mencken once said the capacity of human beings to bore one another seems vastly greater than that of any other animal. The subject-matter of this appeal  a medieval interest known as a remainder  proves Mencken's point, although we shall do our best to bring matters to resolution as painlessly and interestingly as possible. Much is at stake.
At issue is a trust fund. After the family patriarch who controlled the trust fund died, his only child, a son, followed him to the grave. Years later the patriarch's wife passed away. The district court ruled the son was not entitled to the trust fund unless he survived his mother. The son's widow appeals. She claims her late husband's interest vested upon his father's death, and therefore she should receive the trust fund because the son left everything to her. We agree with the widow and reverse.

*792 I. Facts and Prior Proceedings
The facts are not disputed. Alfred Uchtorff died in 1979. Alfred's will is a hairy beast almost twenty pages in length. Fortunately, the parties only dispute "Item VI" of the will. In Item VI, Alfred exercised his power of appointment over "Trust A," a trust fund his father established before a majority of the members of this court were born. In relevant part, Item VI provided:
B. I appoint [the trust fund] property to [a bank] and to my wife Pearl E. Uchtorff, in trust, nevertheless, and to hold as a trust fund for the following uses and purposes, to wit:
1. During the lifetime of my wife Pearl E. Uchtorff ... the trustees shall pay to her ... the net income from the trust fund.
....
3. The provisions of this subdivision 3 shall be effective in any of the following stated events: (i) the event of the death of my said wife before my death; (ii) the event of remarriage of my said wife after my death without renunciation by her; (iii) the event of the death of my said wife after my death, without renunciation by her and without remarriage by her; or (iv) the event of incompleteness or insufficiency or failure for any reason of the appointment hereinbefore made for the benefit of my said wife....
In any of the stated events ..., I appoint said [trust fund]..., in the manner in this subdivision 3 ... provided.
(a) In the event that my son, Richard E. Uchtorff shall survive me, I appoint the [trust fund] to the said Richard E. Uchtorff, as an indefeasibly vested interest in fee.

(b) In the event that my son, Richard E. Uchtorff shall not survive me, I appoint the same to [a bank], and to Carolyn Uchtorff, ..., in trust nevertheless and to hold as a trust fund for [a class composed of the representative issue of the marriage of Richard and Carolyn, subject to divestment under certain circumstances.]
(Emphasis added.)
When Alfred died, he was survived by his wife, Pearl Uchtorff, and their son and only child, Richard Uchtorff. Richard was married to Carolyn Uchtorff. Richard and Carolyn had three children, Sally Hanson, Taylor Armstrong-Lucas, and Julie Kurt ("the children"). Richard and Carolyn eventually divorced, and Richard later married Christa Uchtorff.
Richard died in 1988. Richard disinherited his three children in his will, writing:
I make no provisions in this will for my children for several reasons which I consider sufficient, and generally because of their longstanding and continuous disrespectful conduct to me.
Richard left everything to Christa instead.
Pearl enjoyed the income from the trust fund until her death in 2003. She never renunciated her beneficiary interest in the trust fund, nor did she ever remarry. Today the trust fund contains hundreds of thousands of dollars.
After Pearl's death, the bank, as surviving co-trustee of the trust fund, petitioned the district court for construction of Alfred's will. Two factions claimed the trust fund as their own. Christa argued Richard's remainder interest in the trust fund vested upon Alfred's death and should now pass, like the rest of Richard's assets, through Richard's will to her. The children rejoined, asserting Christa's claim must fail because Richard did not survive Pearl. The district court ruled Alfred's will was ambiguous and did not specifically *793 state what should happen if Richard predeceased Pearl. The court held Iowa's new trust code therefore mandated the children receive the trust fund. Christa appealed.

II. Principles of Review
A declaratory judgment action to construe a will is tried in equity. Iowa Code § 633.33 (2003); see, e.g., In re Estate of Rogers, 473 N.W.2d 36, 39 (Iowa 1991); Houts v. Jameson, 201 N.W.2d 466, 468 (Iowa 1972). Our review is de novo. Iowa R.App. P. 6.4; see In re Estate of Hurt, 681 N.W.2d 591, 593 (Iowa 2004).

III. The Merits

A. Vested or Contingent Remainder
The first question presented in this appeal is whether Richard had a vested or a contingent remainder in the trust fund once he survived Alfred.[1] Contrary to the district court, we think the plain and unambiguous language of Alfred's will indicates Richard's remainder interest in the trust fund vested at Alfred's death.

1. General Principles
This appeal involves a remainder interest, long one of the law professor's favorite instruments of torture. Stated in its most general terms, a remainder
is a future interest created in someone other than the transferor that, according to the terms of its creation, will become a present estate (if ever) immediately upon, and no sooner than, the expiration of all prior particular estates created simultaneously with it.
Thomas F. Bergin & Paul G. Haskell, Preface to Estates in Land and Future Interests 62 (1984) (footnotes and emphasis omitted) [hereinafter Bergin & Haskell]. Alfred's will clearly gave Richard a remainder interest in the trust fund. Richard's interest was a future interest that could become a present estate immediately upon and no sooner than when Pearl's prior interest expired, i.e., when Pearl died, remarried, or renounced her life interest, but only if Richard survived Alfred.
A remainder is either vested or contingent. Moore v. McKinley, 246 Iowa 734, 745, 69 N.W.2d 73, 80 (1955).
A vested remainder, whereby the estate passes by the conveyance, but the possession and enjoyment are postponed until the particular estate is determined, is where the estate is invariably fixed to remain to certain determinate persons. Contingent remainders are where the estate in remainder is limited to take effect either to a dubious or uncertain person or upon a dubious or uncertain event, so that the particular estate may be determined and the remainder never take effect.
Id. at 746-47, 69 N.W.2d at 81 (citing Fulton v. Fulton, 179 Iowa 948, 957, 162 N.W. 253, 256 (1917)); see also In re Estate of Ruhland, 452 N.W.2d 417, 419 (Iowa 1990) (same definitions); Pringle v. Houghton, 249 Iowa 731, 741, 88 N.W.2d 789, 794-95 (1958) (same); Dickerson v. Morse, 200 Iowa 115, 117, 202 N.W. 601, 603 (1925) (same). A remainder may be vested even when enjoyment is postponed until the happening of some future condition; it is contingent only if the remainder interest is "dependent on some dubious *794 circumstance, through which it may be defeated...." Taylor v. Taylor, 118 Iowa 407, 409, 92 N.W. 71, 71 (1902) (emphasis added). Vested remainders are devisable and alienable. Moore, 246 Iowa at 746, 69 N.W.2d at 80.
To determine whether a remainder is vested or contingent, our well-settled canons of will interpretation apply. We need not repeat all of those familiar maxims here. See Rogers, 473 N.W.2d at 39 (reciting basic principles). It will suffice to simply remark that
whether a testamentary remainder is vested or contingent must be determined by the intent of the testator as expressed by the language of the will, if it is plain and unambiguous, and nothing else, considering the will as a whole, and giving effect to every provision thereof if it is reasonably possible.
Moore, 246 Iowa at 749, 69 N.W.2d at 82. Whether a remainder is contingent or vested must also be constantly reassessed as time passes, events happen, and contingencies are fulfilled. 28 Am. Jur. 2d Estates § 255, at 273 (2000); see, e.g., Katz Inv. Co. v. Lynch, 242 Iowa 640, 654, 47 N.W.2d 800, 809 (1951) (holding previously contingent remainder vested upon a death).

2. The Terms of the Will: Richard's Remainder Vested Upon Alfred's Death
To decide the nature of Richard's remainder, the parties direct our attention to Item VI, paragraph 3(a) of the will. That provision states:
(a) In the event that my son, Richard E. Uchtorff shall survive me, I appoint the [trust fund] to the said Richard E. Uchtorff, as an indefeasibly vested interest in fee.
This provision of the will initially rendered Richard's remainder interest contingent, because appointment of the trust fund to Richard was expressly conditioned upon one uncertain event, i.e., that Richard survive Alfred. Once Richard survived Alfred, this condition, the only uncertain event upon which appointment of the trust fund to Richard was predicated, was fulfilled. Richard's interest in the trust fund vested when Alfred died and needed only to wait until Pearl's interest ended to become an estate in possession. See 28 Am. Jur. 2d Estates § 255, at 273 (2000) ("[U]pon the happening of the contingency upon which the estate in remainder is limited, the remainder becomes vested in right and awaits only the termination of the precedent particular estate to become an estate in possession.").

Survival to Time of Possession Not Required
It could be argued the express terms of the will state Richard's remainder remained contingent until Pearl's death. The will indicates appointment of the trust fund to Richard in the manner set forth in paragraph 3(a) would occur in "in the event" Pearl renounced the trust fund, remarried, or died. Although it is true this part of Alfred's will places a condition upon Richard's possession of the trust fund, see Points v. Points, 312 Ky. 348, 227 S.W.2d 913, 915 (1950) (equating "in the event" with "if"), this condition does not make Richard's interest a contingent remainder. Expiration of Pearl's estate was inevitable. Although Pearl's interest might end earlier through renunciation or remarriage, it was certain to cease at the very latest at her death. See Dickerson, 200 Iowa at 118, 202 N.W. at 603 (pointing out, as evidence of vestedness, that "termination of the precedent estate, is certain to occur[,] if not by the remarriage of the widow, then by her death").
Only when a condition serves to make it dubious or uncertain that the remainder *795 interest will ever pass does the condition make the remainder contingent. Moore, 246 Iowa at 746-47, 69 N.W.2d at 81. It does not matter that Richard did not survive Pearl, or even that it could not have been known at any time prior to Richard's death whether Richard would survive Pearl and gain possession of the trust fund. "It is not the certainty of possession or enjoyment which distinguishes the vested remainder, but the certainty of the right to future enjoyment if the remainderman lives until the life tenancy terminates." Lingo v. Smith, 174 Iowa 461, 468, 156 N.W. 402, 405 (1916); accord Dickerson, 200 Iowa at 118, 202 N.W. at 603; cf. Houts, 201 N.W.2d at 470-71 (noting an estate is not rendered contingent because the portion, quantity, or amount of property beneficiary will receive remains uncertain until a future date). This is because
[a] vested remainder confers a present fixed right to the future enjoyment. .... [T]he fact that the devisee is not to have the enjoyment of possession until the termination of the intermediate estate does not prevent the vesting of the remainder immediately upon the death of the testator.... No uncertainty of enjoyment will render the remainder contingent.

Moore, 246 Iowa at 745-46, 69 N.W.2d at 80 (emphasis added, citations omitted); see Callison v. Morris, 123 Iowa 297, 300-01, 98 N.W. 780, 781-82 (1904) (expressing same principle and holding son need not survive mother for remainder to vest); see also 28 Am. Jur. 2d Estates § 265, at 281 (2000). Subdivision three of the will was certain to take effect sometime; if Richard had lived long enough, he would have had the right to enjoy the trust fund when Pearl died. Put another way, Richard's remainder vested in interest upon Alfred's death, even if it was not secured in enjoyment or possession. "Death of the life tenant merely fixed the time for enjoyment." Clarken v. Brown, 258 Iowa 18, 24, 137 N.W.2d 376, 379 (1965). In this case Pearl's death simply came too late for Richard.
To rule otherwise would have absurd results. "[T]here could be no such thing as a vested remainder" because the very definition of a remainder assumes the existence of a prior estate. Bergin & Haskell at 69. As we stated in Katz,
Of course [a remainderman] may predecease the termination of the trust. But this does not make the remainder ... contingent for it is an uncertainty which may attach to all remainders, vested or contingent. Certainty of possession and enjoyment by the remainderman is not essential to a vested remainder.
242 Iowa at 652-53, 47 N.W.2d at 808 (citations omitted); see also Dickerson, 200 Iowa at 118, 202 N.W. at 603 ("He may die before coming into the actual possession of the remainder, but that is a contingency attaching to all remainders.").
At the time of Alfred's death it was clear that whatever happened in the future, it was certain Pearl's interest would terminate, and Richard was next in line. Because the trust fund was certain to pass at some time, "[t]he remainder then vested and only the right of possession and enjoyment await[ed] termination of the trust." Katz, 242 Iowa at 654, 47 N.W.2d at 809. The text of the will states as much: Richard, upon surviving his father, took the trust fund "as an indefeasibly vested interest in fee." This phrase plainly and specifically indicates Richard's interest in the trust fund vested at the moment of his father's death and was not subject to defeasance upon the happening of any subsequent event. Richard was free to devise his vested remainder as he saw fit.[2]

*796 Other Evidence of a Vested Remainder

The structure of the devise in Article VI bears the telltale signs of a vested remainder. First, the remainder was invariably fixed to a determinate person, Richard, whose only impediment to taking possession and enjoyment of the trust corpus was based upon a certain event, at the very latest his mother's death. See Moore, 246 Iowa at 746, 69 N.W.2d at 81. Second, nothing in Article VI states that Richard's interest was contingent upon surviving his mother. Dickerson presents similar facts in this respect. We stated:
The devise is not to the son in case he survives his mother, or is living at her remarriage, or at the termination of the trust. The devise of the remainder after the termination of the particular estate is to the son, to be his "sole and absolute property," subject to the trust. No disposition is made of the estate in case of his death before the termination of the trust.
200 Iowa at 118, 202 N.W. at 603; cf. Johnston v. Boothe, 234 Iowa 201, 205, 12 N.W.2d 176, 178 (1943) (finding vested remainder in absence of "language ... expressing contingency" such as "if living," "then in being," or "if he survive"). Third, the will does not explicitly provide any alternate beneficiaries who should take on the condition that Richard failed to survive his mother. The failure to do so is evidence of a vested remainder. See Dickerson, 200 Iowa at 119, 202 N.W. at 603 ("failure to make provision for the disposition of the remainder, if the son should die before the termination of the trust, is a circumstance entitled to weight as indicating that the condition is not precedent to the vesting of the estate"); Schrader v. Schrader, 158 Iowa 85, 90, 139 N.W. 160, 162 (1912) (same); see also Johnston, 234 Iowa at 205, 12 N.W.2d at 178. Fourth, an alternative arrangement was provided in the will only for the circumstance in which Richard did not survive his father, which, as we have shown previously, was the only uncertain event upon which Richard's interest was predicated. Fifth, Article VI is different than another part of the will. Article IV of Alfred's will stated Richard was entitled to other assets "[i]n the event [he] shall outlive the survivor of myself and my said wife." (Emphasis added.) Article VI, on the other hand, simply says "[i]n the event that my son, Richard E. Uchtorff shall survive me." (Emphasis added.) Unlike Article VI, Article IV also provided for the disposition of the Article IV property in equal shares to Richard's children should Richard predecease Pearl. Divining testator intent is never an easy task, but looking at the whole of the will in this case it is clear Alfred knew how to make Richard's interest contingent upon Richard surviving Pearl but did not do so with respect to the trust fund. See Elkader Prod. Credit Ass'n v. Eulberg, 251 N.W.2d 234, 237-38 (Iowa 1977) (indicating testamentary instrument must be considered as a whole and each part given meaning and effect if possible).

No Latent Ambiguity
The children nonetheless contend Alfred's will contains a latent ambiguity because it does not in so many words indicate who should take under the trust if Richard did not survive his mother. There is no latent ambiguity. Alfred plainly stated what sort of interest Richard had and made clear it was a vested interest once Richard survived Alfred. The children themselves admit there is a "certain *797 lock-tight quality" about the phrase "indefeasibly vested interest in fee"; we agree and furthermore hold there is no room for any other interpretation. To rule otherwise would require us to rewrite the will, judicially superinscribing a new condition of survival. We will not do so. See In re Estate of Fairley, 159 N.W.2d 286, 291 (Iowa 1968) (refusing to rewrite will when its language was clear and unambiguous).

In re Trust of Cross
The Iowa Court of Appeals arrived at the same conclusion as we do on similar facts. In In re Trust of Cross, the testator bequeathed her property in trust to a trustee, directing that necessary amounts from the income and corpus of the trust be used to care for her daughter. 551 N.W.2d 344, 346 (Iowa Ct.App.1996). The testator also directed that a portion of the remaining trust assets be given to the testator's brother "to be his absolutely and in his own right" upon her daughter's death. Id. at 347. The brother predeceased the daughter. Id. at 346. The court of appeals, principally relying upon the above quoted phrase, held the plain language of the will indicated the brother's rights vested at the time of the testator's death, and therefore it did not matter that he predeceased the daughter. Id. at 347-48. For similar reasons, the court also held the will was not latently ambiguous. Id. at 348. The court ruled the terms of the will were clear and plain, and by its terms the will "did not place a survivorship contingency upon [the brother's] interest." Id. The same reasoning applies with equal, if not greater force in this case, given the utterly unambiguous phrase "indefeasibly vested interest in fee." Cf. Dickerson, 200 Iowa at 118, 202 N.W. at 603 (finding use of locution "sole and absolute property" was evidence of vested remainder).

B. The Iowa Trust Code

1. Iowa Code § 633.4701
The children also maintain a provision of the new Iowa Trust Code supersedes our reasoning and that of the court of appeals in Cross. That provision provides:

Unless otherwise specifically stated by the terms of the trust, the interest of each beneficiary is contingent on the beneficiary surviving until the date on which the beneficiary becomes entitled to possession or enjoyment of the beneficiary's interest in the trust.
Iowa Code § 633.4701(1) (emphasis added). The children contend Alfred's will is insufficiently specific concerning the nature of Richard's interest in the trust fund. Christa rejoins that the trust code does not apply in this case, and, to the extent it purports to apply retroactively to this case and divest Roger's estate of a vested property right, it is unconstitutional. See Iowa Const. art. I, § 21 ("No ... law impairing the obligation of contracts shall ever be passed."); see also Iowa R.R. Land Co. v. Soper, 39 Iowa 112, 117 (1874) (recognizing retrospective laws may be declared unconstitutional if they interfere with vested rights). Although the legislature enacted the trust code in 1999, see 1999 Iowa Acts ch. 125, and it did not become effective until 2000, see 1999 Iowa Acts ch. 125, § 109, it purports to apply to all trusts past, present, and future, as well as all proceedings concerning trusts commenced on or after July 1, 2000. See Iowa Code § 633.1106; see also In re Clement Trust, 679 N.W.2d 31, 37 n. 1 (Iowa 2004).

2. Alfred's Will Specifically States Richard's Interest Vested
Alfred's will states with sufficient specificity that Richard's interest vested upon his mother's death. By its terms it states Richard took "an indefeasibly vested interest in fee." It is true Alfred's will *798 does not mimic the statute and state "the interest of each beneficiary is not contingent on the beneficiary surviving until the date on which the beneficiary becomes entitled to possession or enjoyment of the beneficiary's interest in the trust." This is not surprising, however, since Alfred's will was written decades before the new trust code was a glimmer in the legislature's eye. We do not think the statute requires magic words. "We must think things not words, or at least we must constantly translate our words into the facts for which they stand, if we are to keep to the real and the true." Oliver Wendell Holmes, Jr., Law in Science and Science in Law, 12 Harv. L. Rev. 443, 460 (1899). This is not so much a matter of interpretation than it is of translation. Translating the old-fashioned phrase "indefeasibly vested interest in fee" into post-trust code language, we find a specific statement that Richard need not survive Pearl. See In re Estate of Arends, 311 N.W.2d 686, 689 n. 2 (Iowa Ct.App.1981) ("[I]ntention should be determined at the time the will is made, based upon the facts then existing."). This reading of the statute is consistent with the overall framework of the trust code. "The provisions of a trust shall always control and take precedence over any section of this trust code to the contrary." Iowa Code § 633.1105. The provisions of Alfred's will that granted Richard a vested interest therefore trump any provisions in the trust code that would, by default, mandate a different result. Notwithstanding the enactment of the new trust code, the intent of the testator still reigns supreme in this instance.

3. A Little History Helps
Some history will also illuminate matters. As indicated, Alfred referred to Richard's interest as an "indefeasibly vested interest in fee." Given the history of the law in the area, Alfred's use of this phrase is telling. The question has often arisen in the courts as to whether, in the absence of such a phrase, one should imply a condition of survival of the possessor of the precedent estate. Historically, courts did not do so; for various reasons, remainder interests were usually construed as vested rather than contingent whenever possible. See, e.g., Fulton, 179 Iowa at 951, 162 N.W. at 254; Schrader, 158 Iowa at 88, 139 N.W. at 161. In the context of the case at bar, there was
a pervasive constructional preference in the property law for vested future interests over contingent future interests and for early vesting over vesting at a later time; this means, in this context, that there is a constructional preference for there being no condition of survivorship of the life tenant.

Bergin & Haskell at 127 (emphasis added). Thus in 1916 in Lingo we stated:
[A]ll estates will be regarded as vested unless a condition precedent thereto is so clearly expressed that it cannot be regarded as vested without doing violence to the language of the will. To effectuate this rule, words of seeming condition are, if possible, to be construed as postponing the time of enjoyment....
The law presumes that words of postponement relate to the enjoyment of the remainder rather than the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest.
Lingo, 174 Iowa at 467, 468, 156 N.W. at 404, 405 (emphasis added). For example, we held the mere grant of a life estate to one does not render a beneficiary's interest contingent on the life tenant's survival. See id.; see also Clarken v. Brown, 258 Iowa 18, 24, 137 N.W.2d 376, 379-80 (1965) (holding where testator devised a life estate to his brother and at the death of his brother to his lawful heirs that the remainder *799 vested, as there was nothing in the will to indicate to the contrary); Lytle v. Guilliams, 241 Iowa 523, 529, 41 N.W.2d 668, 671 (1950) (similar). Over time, however, this preference waned so that it was unsettled by the time Alfred wrote his will in 1972. See Henkel v. Auchstetter, 240 Iowa 1367, 1375, 39 N.W.2d 650, 654 (1949) ("Many of the reasons which generated the favoritism have long been nonexistent. It is no longer an important rule of construction, and should not be."). Viewed in this historical context, Alfred's use of the phrase "indefeasibly vested interest in fee" is evidence Alfred intended to forestall any implied inference that Richard's interest was contingent upon Richard surviving his mother. Although the new Iowa Trust Code completely reverses the common law preference for vested interests and deems all interests contingent upon survival to the time of possession unless specifically stated otherwise, it is also clear the provisions of the trust must govern. In this case we are constrained to follow the intent of the testator, determined at the time the will is made and based upon the facts then existing, that specifically granted a vested remainder to Richard, which is a specific statement he need not survive Pearl. See Iowa Code § 633.1105; Arends, 311 N.W.2d at 689 n. 2.

4. Constitutional Claim
Because we find the Iowa Trust Code does not apply retroactively to divest Roger's estate of a vested property right, we need not address Christa's constitutional claim in this case.

IV. Disposition
Upon the death of his father, Richard had a vested remainder in the trust fund. He was therefore free to devise it to his wife Christa instead of his children. The district court must be reversed.
REVERSED.
NOTES
[1] As an aside, we point out Iowa's anti-lapse statute is not involved in this appeal. Lapse only occurs when a beneficiary fails to survive the testator. Iowa Code § 633.273(1); cf. In re Estate of Cole, 549 N.W.2d 313, 314 n. 2 (Iowa Ct.App.1996). Nor does the statute apply, in any event, to a will such as this one, which expressly makes survival of the testator a condition of taking under the will. Iowa Code § 633.273(1); see Bankers Trust Co. v. Allen, 257 Iowa 938, 945, 135 N.W.2d 607, 611 (1965).
[2] Likewise Richard was free to convey his vested remainder during his life or borrow against it, as many do. To hold otherwise would wreak havoc upon the settled expectations of many parties to such transactions.