# IN THE COURT OF APPEALS OF IOWA

No. 23-0847
Filed April 10, 2024

**ERIN JOHNSON, TRACI CHRISTENSON, CARRIE SLAGLE and RICHARD DOUD,**
    Plaintiffs-Appellees,

**and**

**WESLEY J. HILLSHEIM,**
    Intervenor,

**vs.**

**MICHAEL DENNIS, prior trustee of the DENNIS FAMILY TRUST,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Linn County, Fae Hoover, Judge.


    A trustee appeals the district court ruling ordering distribution of trust funds.

**AFFIRMED.**


    David L. Marner Jr., Ann M.K. McCrea, Dana A. Judas, and Daniel G. Clouse of Nazette Marner Nathanson Knoll LLP, Cedar Rapids, for appellant.

    Chad D. Brakhahn of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellees.


    Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Michael Dennis appeals the district court ruling on the distribution of assets of the Dennis Family Trust.[1] He argues that Mardelle Doud had a vested remainder, and the court erred in its interpretation of the trust when the court granted her share of the trust estate to her issue.[2] Michael asserts the trust required that the assets be distributed to Mardelle's estate rather than to her children.[3]

## I. Background Facts and Prior Proceedings

In 1992, husband and wife, Charles and Josephine Dennis executed the Dennis Family Trust. They were both the settlors and trustees. The trust provided for Charles and Josephine during their lives and for distribution to their children after their deaths. Charles and Josephine had four children, Michael, Greg, George, and Mardelle. Charles died in 2006, and Josephine died in 2013.

Michael and Mardelle became trustees after their mother's death. The trust dictated that:

> Upon the death of the surviving Trustor, unless stated otherwise, the Trustee shall apply and distribute the net income and principal of each of the shares of the resulting Trust Estate . . . set aside for the benefit of the Trustor's named beneficiaries as follows:
>
> Michael E. Dennis ¼
> George L. Dennis ¼
> Greg A. Dennis ¼
> Mardelle M. Doud ¼

---

[1] On appeal, Michael does not challenge the district court's removal of himself as trustee and the appointment of a new trustee.

[2] Mardelle's children—Erin Johnson, Traci Christenson, and Carrie Slagle—and Mardelle's surviving spouse, Richard Doud, are the plaintiffs.

[3] Because the trust involves parents and siblings, many of whom share a surname, we refer to them by their first names in this opinion.

At the time of Josephine's death, the trustees attempted to sell the house owned by the trust, but they could not come to an agreement on a sale price. No distribution occurred.

Mardelle passed away in 2019. At the time of her death, the assets remaining in the trust were the house, its contents, and money in a trust bank account. After Mardelle's death, Michael became the sole trustee. Mardelle's daughter had been living in the home and agreed to buy it. After the sale of the house closed, Michael made the first distribution of the trust to himself, George, and Greg, but not to Mardelle's issue.[4]

To justify the lack of distribution to Mardelle's issue, Michael alleges that before Mardelle's death, she wrote herself checks out of the trust account to cover "hot checks" from gambling debt. He also asserts that he provided money directly to Mardelle to cover gambling debt. Michael contends the funds should be distributed to Mardelle's estate once opened because her interest was vested when Josephine died. Michael also has an interest in her debt to him being paid out of the estate.[5] Mardelle's children and husband filed this action seeking the distribution of Mardelle's share, contending they were entitled to it under the trust, citing to section 4.4(d):

> If any beneficiary for whom a share of the trust estate has been set aside should fail to survive the above distribution, then the Trustee shall distribute one hundred percent (100%) of the balance of such deceased beneficiary's share of the Trust Estate, in equal shares, to the issue of the deceased beneficiary . . .

---

[4] At the time of distribution, George was also deceased, and his share was distributed to his family.
[5] Mardelle's children stated that they did not intend to pay Michael.

The district court agreed and ruled that the plaintiffs were entitled to Mardelle's share of the trust. The court also removed Michael as a trustee, citing a conflict of interest. Michael moved to reconsider, which the court denied. Michael appeals.

## II. Standard of Review

We review this action in equity de novo. *In re Est. of Hurt*, 681 N.W.2d 591, 593 (Iowa 2004).

## III. Distribution of the Trust Assets

Michael argues Mardelle had a vested remainder interest in one-fourth of the trust estate at the time of her death and the district court erred in interpreting the trust. He asserts the trust makes clear the distribution should have gone to Mardelle's estate, rather than to the plaintiffs.[6]

The parties argue over whether Mardelle had a vested interest, but the interpretation of the trust language ultimately determines the outcome.[7] When examining a trust's language, our focus is on the intent of the testator. *In re Steinberg Fam. Living Tr.*, 894 N.W.2d 463, 471 (Iowa 2017). But we determine that intent by examining the language of the trust itself and "the question is not what the testator meant to say, but rather what is the meaning of what the testator did say." *In re Est. of Rogers*, 473 N.W.2d 36, 39 (Iowa 1991). In this examination

---

[6] At the time of hearing, there was no estate open for Mardelle.

[7] Our focus is on determining the outcome dictated by the trust language. "Whether a testamentary remainder is vested or contingent must be determined by the intent of the testator as expressed by the language of the will . . . ." *In re Will of Uchtorff*, 693 N.W.2d 790, 794 (Iowa 2005) (citation omitted). "A remainder may be vested even when enjoyment is postponed until the happening of some future condition; it is contingent only if the remainder interest is 'dependent on some dubious circumstance, through which it may be defeated.'" *Id.* at 793–94 (quoting *Taylor v. Taylor*, 92 N.W. 71, 71 (Iowa 1902)).

we utilize the "usual and ordinary meaning" of the language in the trust. *Steinberg Fam. Living Tr.*, 894 N.W.2d at 471. Additionally, "[w]hen determining a testator's intent, we consider the document as a whole and give each part meaning and effect when possible." *Id.*

The distribution of the trust here is governed by section 4.4 of the Trust. It reads in part:

> (a) Upon the death of the surviving Trustor, unless stated otherwise, the Trustee shall apply and distribute the net income and principal of each of the shares of the resulting Trust Estate . . . set aside for the benefit of the Trustor's named beneficiaries as follows:
> Michael E. Dennis ¼
> George L. Dennis ¼
> Greg A. Dennis ¼
> Mardelle M. Doud ¼
> (b) If any beneficiary, to whom the Trustee is directed in a preceding provision hereof, to distribute any share of the trust principal, is under the age of 21 years when the distribution is made, Trustee shall, continue to hold such beneficiary share as a separate trust until such time when beneficiary reaches age 21. The trustee in their absolute discretion, may distribute to a beneficiary under age 21, their respective share, for matters including college or vocational training.
> (c) When each beneficiary reaches the age of 21 years, the Trustee shall distribute to each beneficiary One Hundred Percent (100%) of the then balance of the principal of his or her share of the Trust Estate. If any beneficiary under this trust other than a surviving spouse, dies within 90 days after the first Trustor's death, all of the provisions in this trust for the benefit of such persons shall lapse, except for the principle of representation to a deceased beneficiary's children (Section 4.5), and this trust shall be construed as if such person had predeceased the first Trustor; therefore, no distribution shall be made for at least 90 days after the first Trustor's death.
> (d) If any beneficiary for whom a share of the trust estate has been set aside should fail to survive the above distribution, then the Trustee shall distribute one hundred percent (100%) of the balance of such deceased beneficiary's share of the Trust Estate, in equal shares, to the issue of the deceased beneficiary, to be held in trust for such beneficiary's issue until each such beneficiary reaches the age of twenty-one (21) years. If there should be no such surviving issue, then all of the balance of the deceased child's share of the Trust Estate shall be added to the other shares set aside for the

benefit of the Trustor's other living beneficiaries, as hereinabove provided, including proportionately both the distributed and the undistributed portions of each such share, to be held, administered and distributed as part of other shares. If all beneficiaries fail to survive the above distribution, then their shares of the Trust Estate shall be divided equally among the beneficiaries surviving issue to be held in trust until each of the issue reaches twenty-one years of age.

In examining this language, the district court ruled that subsection (d) required that the distribution be made to Mardelle's issue as Mardelle had failed to survive the distribution. We agree. The language of section 4.4 is clear. *See id.* This section of the trust states that if a beneficiary fails to survive the distribution, their share is to be distributed to their issue. *See id.* There is no ambiguity in this language. *See id.* And this language shows Mardelle's interest was contingent on surviving the distribution. *See Uchtorff*, 693 N.W.2d at 793–94.

Michael makes several additional arguments, but these arguments are defeated by the plain language of the trust. First, Michael asserts the context of section 4.4(d) indicates it must only apply when a beneficiary is under the age of twenty-one, and he points to the proceeding subsections 4.4(b) and (c) which contemplate when and how a distribution should occur if a beneficiary is under the age of twenty-one at the time of distribution. In short, he argues that section 4.4(d) applies when a beneficiary under the age of twenty-one predeceases their own distribution that would have occurred when they turned twenty-one. He asserts the language indicating shares "set aside" in section 4.4(d) refers only to shares for beneficiaries under the age of twenty-one created in section 4.4(b). This argument unnecessarily narrows section 4.4(d), and it is not supported by the text of the trust or the context of section 4.4.

The "set aside" language Michael points to appears in only two locations in section 4.4—section 4.4(a) and (d). It does not appear in section 4.4(b). Knowing that "[w]ords occurring more than once in a will are assumed to be used always in the same sense," the "set aside" language cannot refer only to shares for beneficiaries under twenty-one. *See Roskrow v. Jewell*, 135 N.W. 3, 4 (Iowa 1912). Section 4.4(a) states that "shares of the resulting Trust Estate . . . *set aside* for the benefit of the Trustor's named beneficiaries as follows . . . Mardelle Doud ¼." (Emphasis added). "Set aside" in the context of shares of this trust estate is not limited only to shares for beneficiaries under twenty-one. Instead, it is a general term used to describe all allocated shares of the trust estate.

Further, although section 4.4(d) comes after section 4.4(b), both are subsections of section 4.4, which is titled "Trust Income and Principal Distribution" and encompasses all distributions. The context of section 4.4(d) does not suggest it applies only to a prior subsection of section 4.4 rather than to section 4.4 as a whole.

Michael's second argument concerns the relationship between sections 4.4 and 4.5 of the trust. Section 4.5 states: "Should a beneficiary predecease the surviving Trustor's death such share of that beneficiary's interest shall then be distributed to the surviving issue of such deceased beneficiary on the principle of representation." Michael argues the district court's reading of section 4.4 renders section 4.5 meaningless because a distribution only happens after the surviving trustor's death, and any beneficiary that predeceases a trustor also predeceases the distribution. In other words, Michael argues for an application of the canon of surplusage. But "we resort to technical rules or canons of construction only when

the will is ambiguous or conflicting or the testator's intent is uncertain." *Rogers*, 473 N.W.2d at 39. We have already determined there is no ambiguity in this language.

And sections 4.5 and 4.4(d) apply to different situations. Section 4.5 applies when a beneficiary predeceases the surviving trustor, and section 4.4(d) applies when a beneficiary predeceases the distribution. Although some overlap exists in those two concepts, they are different. As was true here, the distribution and the death of the surviving trustor can happen many years apart. Additionally, "[t]he rule against superfluous language is not 'the be-all and end-all.'" *U.S. Bank, Nat'l Ass'n v. Bittner*, 986 N.W.2d 840, 850 (Iowa 2023) (citation omitted). It "does not require courts to read a contract in a way that contains no surplusage," *Brazil v. Auto-Owners Ins.*, 3 F.4th 1040, 1043–44 (8th Cir. 2021), and "[i]t is but one rule of construction" *U.S. Bank, Nat'l Ass'n*, 986 N.W.2d at 850. The existence of section 4.5 does not change the plain meaning of section 4.4.

The language of the trust requires that if a beneficiary predeceases the distribution of the trust estate, that beneficiary's share is to go to their issue. Because a beneficiary's interest was contingent on surviving the distribution, Mardelle's share should be distributed to her issue. *See Uchtorff*, 693 N.W.2d at 793–94. The district court properly interpreted the trust language. Accordingly, we affirm.

**AFFIRMED.**